UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD GREEN,<br>    *Plaintiff*,<br><br>    v.<br>CELLCO PARTNERSHIP, d/b/a Verizon Wireless,<br>    *Defendant*. | No. 3:15-cv-00288 (JAM) |

**RULING GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff used to work as a customer service representative for the defendant telephone company. In February 2014, plaintiff allegedly hurt his back while working and went out on leave. About two months later and before plaintiff had recovered to the point where he could return to work, defendant terminated plaintiff's employment. Plaintiff has now filed this lawsuit alleging that he was disabled and that his employment was terminated because of his disability, that he was not granted a reasonable accommodation, and that he was the subject of retaliation because he sought leave time and filed a workers' compensation claim.

Defendant has moved for summary judgment. Defendant argues that plaintiff was not disabled and that—even if he was disabled—defendant was not required by law to grant him additional leave time. Defendant further contends that plaintiff's work performance was deficient and that the real reason for the termination of plaintiff's employment was because plaintiff had disconnected too many customer calls. Although one or more of defendant's arguments may prove ultimately persuasive, I conclude that genuine issues of fact remain for trial. Accordingly, I will largely deny defendant's motion for summary judgment.

1

**BACKGROUND**

The following facts are either agreed upon by both parties or presented in the light most favorable to plaintiff as the non-moving party. Plaintiff worked in a call center for defendant, where his duties focused on customer service—answering customers' phone calls and helping them resolve whatever problems they may be having with their phones. Defendant required its customer service employees, including plaintiff, to treat its customers courteously. Defendant encouraged its employees to help customers resolve their problems the first time they called, and discouraged "disconnects," a term referring to when a customer service representative would "drop" a call before the conversation with the customer had ended. Doc. #28 at 1–5.

Plaintiff had a mid-year review in 2013, in which defendant identified these disconnects as a problem that plaintiff should focus on. About four months after that review, plaintiff's manager, Richard Eckert, placed plaintiff on a "performance improvement plan." The plan encouraged plaintiff to do a better job of making sure he resolved customers' needs on their first call, as too many of his callers were calling back within a short period after talking with him. Doc. #28 at 1–5.

In 2014, plaintiff began reporting to a new supervisor, Ashley Ottman. At times, while Ottman was supervising him, plaintiff and a caller would become disconnected, and plaintiff would consult Ottman for advice about calling the customer back. In particular, plaintiff at times asked Ottman what to do when he and a customer became disconnected, but he noticed the customer had already called back in to the call center and was speaking with another representative. In those situations, Ottman told plaintiff that he did not need to call the customers back. Doc. #34-4 at 16–18.

While working as plaintiff's supervisor, Ottman commented to plaintiff several times that if employees got sick and took sick days, they could be fired. Doc. #34-4 at 6–7. She also said that if employees complained about her stance regarding sick days, they could be fired. *Id.* at 8–10.

On February 19, 2014, Ottman met with plaintiff to discuss a routine audit of plaintiff's calls. The audit showed that between January 15 and February 15 of that year, there were eight calls in which plaintiff had disconnected a customer and failed to call that customer back. It also showed that there was another call in which plaintiff had told the customer he would send the customer a text message and call back, but failed to do so. Doc. #28 at 1–5.

The next day, plaintiff reported to defendant that the previous night at work he had fallen out of his chair and injured his back. Plaintiff had a prior history of back injuries and related pain, and he said the fall had caused him to experience significant pain. Plaintiff went on leave effective that day, and defendant approved, via a third-party administrator, plaintiff's claim for short-term disability benefits, workers' compensation, and a leave of absence under the Family and Medical Leave Act. Doc. #28 at 7. Plaintiff had not reported any medical condition to defendant prior to this incident. *Id.* at 6.

Plaintiff was diagnosed by his physician with lumbar strain and a back contusion. He treated his pain for several weeks with narcotics and ibuprofen, and eventually with cortisone injections. Doc. #28 at 9. During this time, he continued to be on leave, although he was in frequent communication by telephone with Ottman. Doc. #34-4 at 32–33. Ottman repeatedly cautioned plaintiff against taking too much leave, telling him that he could get fired. *Id.* at 31–34.

Around April 1, 2014, plaintiff attempted to return to work. Midway through his drive to the office, though, he determined that his pain was too great. Upon arriving at work, he told an

HR representative that he would not be able to work that day, and the HR representative told him that was "fine." Doc. #34-4 at 38–39. Plaintiff returned home, and continued on leave for three more weeks. Doc. #28 at 9. On April 25, 2014, while plaintiff was still on leave, he received a call from defendant informing him that he had been terminated. *Id.*

Since then, plaintiff has continued to deal with the repercussions of his injury and ensuing pain. In July 2014, his doctor cleared him for light-duty desk work. Doc. #34-4 at 43–44. By 2015, he was cleared for light-duty work with the restriction that he could not bend, stoop, squat, or lift more than ten pounds. *Id.*

The complaint alleges the following claims. Count One alleges that defendant's termination of plaintiff constitutes disability discrimination in violation of the Americans with Disabilities Act (ADA). Count Two alleges disability discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA). Count Three alleges that defendant failed to provide plaintiff with reasonable accommodation in violation of the ADA, and Count Four makes the same allegation with respect to CFEPA. Count Five alleges that defendant retaliated against plaintiff for exercising his rights under the ADA; Count Six is a retaliation claim under CFEPA. Count Seven alleges defendant interfered with plaintiff's exercise of legal rights under the Family and Medical Leave Act (FMLA), and Count Eight alleges defendant retaliated against plaintiff in violation of the FMLA. Count Nine, the last count, alleges retaliation in violation of Connecticut's workers' compensation laws. Doc. #1 at 1–17.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

   1.  *Disability discrimination in violation of the ADA and CFEPA*

Plaintiff alleges that his termination constitutes disability discrimination in violation of the Americans with Disabilities Act (ADA) and the Connecticut Fair Employment Practices Act (CFEPA). Both the ADA and CFEPA prohibit discrimination on the basis of disability and apply the same legal framework to the discrimination analysis. *See Stoffan v. S. New Eng. Tel. Co.*, 4 F.Supp.3d 364, 372 n. 2 (D. Conn. 2014). These claims of disability discrimination are subject to the familiar *McDonnell Douglas* burden-shifting standard. *See Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d Cir. 2015); *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013). Thus, a plaintiff may establish a *prima facie* case for discrimination if he can show by a preponderance of the evidence that: (1) his employer is subject to the ADA/CFEPA; (2) he was disabled within the meaning of the ADA/CFEPA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *Ibid.*

If the plaintiff succeeds in meeting that burden, his employer can counter the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for its action. *See Cortes*, 802 F.3d at 231. Finally, the plaintiff can still succeed on his claim if he can show that the proffered reason was a "pretext" for discrimination, *ibid.*, a showing which requires him to demonstrate both that his employer's stated reason was untrue or incomplete and that discrimination played a causal role in his termination. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010); *see also DeAngelo v. Yellowbook, Inc.*, 105 F. Supp. 3d 166, 174-78 (D. Conn. 2015).

Defendant does not contest that it is subject to the ADA and CFEPA. Defendant's three main arguments are that plaintiff was not disabled, that he was not qualified to do his job at the time of his termination, and that any disability had nothing to do with plaintiff's termination, because defendant was about to terminate plaintiff due to his excessive number of disconnected calls with customers. I will consider each of these arguments in turn.

### A. *Whether plaintiff was disabled within the meaning of ADA and CFEPA*

Under the ADA, a person is disabled if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [he is] regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA specifies that "major life activities include, but are not limited to . . . walking, standing, lifting, bending . . . and working." *Id.* § 12102(2)(A).

Congress amended the ADA in 2008 explicitly to lower the burden for plaintiffs to prove that they meet the ADA's definition of disability, *Price v. City of New York*, 558 Fed. App'x 119, 120 (2d Cir. 2014), and the Act specifies that its definition "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The ADA's implementing regulations further specify that

"the primary object of attention . . . should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii).

Given these explicit rules of construction, it is clear that at least a genuine fact issue remains about whether plaintiff was disabled at the time of his termination. Plaintiff has a history of chronic pain related to back injury, and this pain is at times severe enough to prevent him from working, lifting, and bending for weeks or months on end. While defendant is right to point out that plaintiff was able to work before he was injured, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). Plaintiff has submitted physicians' notes describing back surgery in the late 1990s and the chronic pain he suffered theraeafter. Doc. #34-9 at 2. He has submitted evidence that he had a device surgically placed in his spine more than a decade after his first surgery to stimulate his nerves and treat his ongoing pain. Docs. #34-10, #34-11. Several months after his injury in February 2014, his physician noted his back pain and described him as being "disabled from work," and "unable to be actively employed." Doc. #34-12 at 2. Because of his spinal stimulator, his physician was unable to order an MRI to image his spine after the workplace injury. Doc. #34-9 at 3. Nonetheless, these post-injury notes from his physicians describing a history of back impairment and chronic pain are sufficient, when read in the light most favorable to plaintiff, to allow a reasonable jury to conclude that he was disabled within the meaning of the ADA.

CFEPA provides that a person is disabled if he has "any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness." Conn. Gen. Stat. § 46a-51(15). Because this definition does not include the requirement that a major life activity be substantially limited, it is generally regarded as broader in scope than the ADA's definition of disability. *See, e.g.*, *DeAngelo*, 105 F. Supp. 3d at 180.

Defendant argues that plaintiff cannot meet this definition nonetheless because he has not demonstrated that his alleged impairment is "chronic." Doc. #27-1 at 22–23. But plaintiff has submitted evidence of more than a decade of intermittent pain related to a spinal injury and subsequent surgeries. Connecticut state courts have found chronic pain resulting from surgery to be a chronic infirmity or impairment under CFEPA. *See Gaillard v. Southwestern Connecticut Agency on Aging, Inc.*, 2014 WL 6804875 at *4 (Conn. Super. 2014); *see also Fasulo v. HHC Physicianscare*, 2016 WL 3266434 at *6 (Conn. Super. 2016). A reasonable jury could find plaintiff's impairment to be chronic for purposes of CFEPA, and so the issue of plaintiff's disability is not appropriate for me to resolve on a motion for summary judgment.

### B. *Whether plaintiff was qualified to perform the essential functions of his job*

Although plaintiff does not dispute that he was unable to perform his job on the date that he was terminated, plaintiff argues that he would have been able to perform his job if he had been granted a reasonable accommodation in the form of additional leave from his employment to recover from his injury.[1] The Second Circuit has "never resolved the question of whether paid

---

[1] Defendant argues that plaintiff did not request any reasonable accommodations, but points only to testimony that plaintiff did not ask for any changes in the condition of his working environment—a standing desk, for instance. Doc. #27-2 at 53–54. Plaintiff has clearly testified that he sought leave from defendant, Doc. #34-4 at 46, and defendant agrees that it approved a leave of absence for him and terminated him while he was on that leave. Doc. #28 at 7–8. A genuine issue of fact remains whether plaintiff's request for leave was indefinite or otherwise not reasonable.

or unpaid leave can constitute a reasonable accommodation under the ADA." *Petrone v. Hampton Bays Union Free School Dist.*, 568 Fed App'x 5, 7 n.2 (2d Cir. 2014). Most other circuits and the EEOC, however, have concluded that, depending on the context, the "reasonable accommodation" requirement of the ADA may require an employer to grant a reasonable unpaid leave of absence for a disabled employee. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 n.5 (2d Cir. 2006) (collecting cases). I agree with the majority view and conclude that a disabled employee's request for leave to recover from a medical condition that causes a disability may, under certain circumstances, constitute a request for a reasonable accommodation under the ADA.

As the Second Circuit has made clear, the ADA does not require employers "to hold an injured employee's position open indefinitely while the employee attempts to recover." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000). Accordingly, to the extent that the Second Circuit has assumed that the ADA requires an employer to grant a disabled employee's request for leave, it has indicated that the request may only be for a finite leave rather than an indefinite leave. *See Jarrell v. Hosp. for Special Care*, 626 Fed App'x 308, 311–12 (2d Cir. 2015); *Graves*, 457 F.3d at 184-86. This is in keeping with an understanding that the disabled employee must have a good prognosis of recovery or improvement when the leave is requested, *see, e.g.*, *Valdez v. McGill*, 462 Fed App'x 814, 818 (10th Cir. 2012), such that an employer is not put in an untenable position of having to accede to requests for leave that have no foreseeable or proximate termination date.

Defendant argues that it moved forward with the termination of plaintiff's employment because of the "specter of a leave of indefinite length." Doc. #27-1 at 16. Maybe so, but I think that is a debatable proposition best left for a jury to decide. The parties agree that plaintiff felt

9

able to return to work in April 2014, about two months after his injury, and he had a medical examination explicitly clearing him for light duty work in July 2014. Doc. #28 at 9–10 (¶¶ 58–59). While he was on leave, plaintiff and defendant were in relatively close communication, at times speaking daily. Doc. #34-4 at 32–33. When plaintiff attempted to return to work on April 1, 2014, he told an HR representative that he would not be able to work that day, and he was told that was "fine." *Id.* at 38–39.

A reasonable jury could conclude that plaintiff did not request a leave of indefinite length, but rather that he was engaged in a continuing process of requesting short intervals of leave. And based on his statements that he felt ready to return to work in April, a jury could reasonably find that before he was terminated he had a good prognosis of recovering shortly. I therefore conclude that a genuine issue of fact remains concerning whether plaintiff was qualified to perform his job if he had been granted a reasonable accommodation.

### C. *Whether plaintiff was terminated because of his disability*

Plaintiff has testified that his supervisor made repeated comments that employees taking leave could be fired for doing so, and that they also could be fired for complaining about this stance. Doc. #34-4 at 6–7. When plaintiff was injured and went to the company's treatment facility, his supervisor called the facility to ask plaintiff whether he could prove that he had been injured. *Id.* at 30. When he was taking leave, she told him several times that he could get fired if he took too much leave. *Id.* at 31–34. This evidence alone is easily sufficient to carry plaintiff's *prima facie* burden to show that he was terminated because of his disability.[2]

---

[2] Plaintiff and defendant disagree over whether to use a "motivating factor" or "but-for" standard to evaluate this issue. *See Wesley-Dickson v. Warwick Valley Cent. School Dist.*, 586 Fed App'x 739, 745 n.3 (2d Cir. 2014). I do not reach this issue, however, because plaintiff has adduced evidence sufficient to create a genuine issue of material fact under either standard.

Without meaningfully contesting that plaintiff has met his *prima facie* burden, defendant insists that it fired plaintiff solely because he violated defendant's "five-disconnect rule." According to defendant, it had a firm policy that if any customer service representative disconnected five or more calls without immediately calling the disconnected customer back, the representative would be terminated. Doc. #27-1 at 9. Because defendant's audit of plaintiff's calls revealed eight such disconnected calls, defendant argues that the decision to terminate plaintiff was a foregone conclusion as of February 19, 2014, and before plaintiff advised defendant of his back injury the next day.

Plaintiff has raised plenty of doubts about defendant's argument that suffice to create a genuine issue of fact for trial. Most troublingly, the so-called five-disconnect rule was never written down, and plaintiff was never advised that he would be terminated if he disconnected five or more customer calls. Defendant's HR representative, Nancy Flynn, acknowledged that this rule was never written down. Doc. #34-6 at 9. While Flynn stated that it was the company's policy, and uniformly and consistently applied, she could not recall discussing the policy with any of defendant's employees other than her supervisor. *Id.* at 9–13. At one point, she said she referenced the rule on the call terminating plaintiff; at another time, she said she did not reference the rule. *Id.* at 16.

Ottman, plaintiff's supervisor, also did not know of any place the rule was documented and did not know whether the employees under her supervision were aware of the rule. Doc. #34-5 at 19–20. She could not recall telling any of the employees she had supervised about the rule. *Id.* at 20. She could not remember any employee other than plaintiff who had been found to be in violation of the policy. *Id.* at 35. Ottman also did not remember the contents of her

11

conversation with plaintiff the night before he reported the injury, Doc. #27-5 at 11, including whether she communicated the five-disconnect rule to him at that time. *Id.* at 13.

Defendant asserts that the five-disconnect rule was the basis for the termination of other customer service employees, and names nine specific terminated employees. Doc. #28 at 5 (¶ 29). It is true that these terminated employees appear to have more than five disconnects in their record—sometimes significantly more than five. But at least eight of these individuals' termination sheets make no reference to any five-disconnect rule. Doc. #34-6 at 24–37.

Nor is it clear that no exception to the five-disconnect rule would have been made for plaintiff. According to plaintiff, there were software problems that led to disconnection of customer calls. Doc. #34-4 at 51–52.

In addition, the fact that neither Ottman nor Flynn advised plaintiff at any time about the five-disconnect rule prior to when plaintiff was terminated on April 25, 2014, raises a significant doubt about whether any five-disconnect rule was the true reason for the termination decision. Indeed, the fact that Ottman allegedly told plaintiff while he was on leave that he needed to return soon is arguably inconsistent with defendant's insistence that it intended all along to terminate plaintiff's employment after it learned of the adverse audit results. At the least, a jury could so find.

Plaintiff has thus demonstrated a genuine fact issue about why he was terminated. In light of Ottman's multiple warnings to plaintiff about the consequences of taking leave time, a reasonable jury could conclude that he was terminated because of his disability and not become of some secret and unwritten, five-disconnect rule that defendant never communicated in advance to plaintiff or apparently to other employees. Accordingly, I will deny defendant's motion for summary judgment with respect to Counts One and Two.

### 2. *Failure to provide reasonable accommodation and retaliation in violation of the ADA, CFEPA, and FMLA*

In addition to his discrimination claim, plaintiff brings additional claims under the ADA, CFEPA, and FMLA.[3] These claims are similar to the disability discrimination claim just discussed. "A plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate," for instance, "by showing each of the following: (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96–97 (2d Cir. 2009). While CFEPA defines disability more broadly than the ADA, the ADA and CFEPA apply the same standards for reasonable accommodation. *See Martinsky v. City of Bridgeport*, 504 F. App'x 43, 48 (2d Cir. 2012). The ADA, CFEPA, and FMLA also prohibit retaliating against individuals for exercising their legal rights under each statute. *See* 42 U.S.C. § 12203; Conn. Gen. Stat. § 46a–60(a)(4); *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012).

As discussed above, plaintiff has raised a genuine issue of fact about whether he was disabled, about whether he would have been able to work with a reasonable accommodation of leave for an additional reasonable and finite period of time, and about whether he was terminated for discriminatory and retaliatory reasons relating to his disability and his requests for leave. Accordingly, I will deny defendant's motion for summary judgment with respect to Counts Three through Six as well as Count Eight.

---

[3] Plaintiff has abandoned Count Seven of his complaint, which alleges defendant interfered with the exercise of his rights under the FMLA. Doc. #34-3 at 38.

3.  *Retaliation in violation of the Connecticut Workers' Compensation statute*

Plaintiff also alleges that he was terminated in violation of the Connecticut Workers' Compensation statute, Conn. Gen. Stat. § 31-290a. "To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the act and that the defendant discriminated against her for exercising that right." *Diaz v. Hous. Auth. of City of Stamford*, 258 Conn. 724, 731 (2001). In evaluating such a claim, the Supreme Court of Connecticut has applied the burden-shifting analysis of *McDonnell Douglas*. *See Ford v. Blue Cross & Blue Shield of Conn., Inc.*, 216 Conn. 40, 53 (1990).

Plaintiff has not raised a genuine issue of fact that his termination was tied to his exercise of any right afforded to him by the workers' compensation statute. Plaintiff admits that he cannot recall discussing workers' compensation with defendant. Doc. #27-2 at 57. Defendant also approved his workers' compensation claim months before it terminated him. Doc. # 28 at 7 (¶ 43). Ottman's warnings to plaintiff about taking leave, even read in the light most favorable to plaintiff, does not adequately suggest any animus against plaintiff specifically because of his filing of a workers' compensation claim. Accordingly, I will grant defendant's motion for summary judgment as to Count Nine.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED with respect to Counts Seven and Nine of plaintiff's complaint. The motion for summary judgment is DENIED with respect to Counts One, Two, Three, Four, Five, Six, and Eight.

It is so ordered.

Dated at New Haven, Connecticut, this 31st day of October 2016.

                                                  /s/ *Jeffrey Alker Meyer*
                                                  Jeffrey Alker Meyer
                                                  United States District Judge